IN THE
UNITED STATES COURT OF APPEAL
FOR THE NINTH CIRCUIT

MARK HAYNIE; et al.,
*Plaintiffs - Appellants*,

vs.

KAMALA HARRIS; et al.,
*Defendants - Appellees.*

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SUSAN ILLSTON U.S. DISTRICT JUDGE – PRESIDING

APPELLANTS' OPENING BRIEF

*Donald E. J. Kilmer, Jr.
CA State Bar No.: 179986
1645 Willow Street, Suite 150
San Jose, California 95125
Voice: 408/264-8489
Fax: 408/264-8487
Don@DKLawOffice.com

*Counsel of Record for Plaintiff - Appellants*

# CORPORATE DISCLOSURE STATEMENT

THE CALGUNS FOUNDATION, INC., (CGF) is a non-profit organization incorporated under the laws of California with its principal place of business in Roseville, California. CGF supports the California firearms community by promoting education for all stakeholders about California and federal firearms laws, rights and privileges, and by defending and protecting the civil rights of California gun owners. CGF is not a publicly traded corporation.

SECOND AMENDMENT FOUNDATION, INC., (SAF) is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including California. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately owned and possess firearms, and the consequences of gun control. SAF is not a publicly traded corporation.

Both institutional plaintiffs have provided funding for this suit.

Dated: July 23, 2014
                                        _/s/   Donald Kilmer___
                                        Donald Kilmer
                                        Attorney for Appellants

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Facts Relating to Haynie. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Facts of Richards' First Arrest. . . . . . . . . . . . . . . . . . . . . . . . . . 9

    Facts of Richards' Second Arrest. . . . . . . . . . . . . . . . . . . . . . . 12

    Facts Relating to Defendants' Duty to Clarify the Law. . . . . . . . 14

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    I.    First and Second Amendment Claims Should be Subject
         to the Same Standing Analysis. . . . . . . . . . . . . . . . . . . . . . . 19

    II.   City of Los Angeles v. Lyons should not be applied in
         First or Second Amendment Cases. . . . . . . . . . . . . . . . . . . 23

    III.  Plaintiffs' Claims are Ripe. . . . . . . . . . . . . . . . . . . . . . . . . 25

    IV.  The Institutional Plaintiffs Have Standing. . . . . . . . . . . . . 28

V.      Allegations of a "Chilling Effect" are Sufficient for First and Second Amendment Standing. . . . . . . . . . . . . . 32

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . 34

NOTICE OF RELATED CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

CERTIFICATE OF SERVICE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

# TABLE OF AUTHORITIES

## CASES

*Abbott Laboratories v. Gardner* (1967)
    387 U.S. 136 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ariz. Right to Life Political Action Comm. v. Bayless* (2003)
    320 F.3d 1002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Babbitt v. United Farm Workers* (1979)
    442 U.S. 289 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Baggett v. Bullitt* (1964)
    377 U. S. 360. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 32

*Brown v. Entertainment Merchants Association* (2011)
    131 S. Ct. 2729; 2743 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Califano v. Sanders* (1977)
    430 U.S. 99 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Carlin v. DairyAmerica, Inc.,*
    688 F.3d 1117, 1127 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . 4

*Carlin v. DairyAmerica, Inc.,*
    688 F.3d 1117, 1127 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . 17

*Chula Vista v. Norris*
    2014 U.S. App. LEXIS 11199.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*City of Houston v. Hill* (1987)
    482 U.S. 451 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*City of L.A. v. Lyons* (1983)
    461 U.S. 95 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 29

*Colwell v. Dept. of Health & Human Services* (9th Cir. 2009)
    558 F.3d 1112. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Comite de Jornaleros de Redondo Beach v.*
    *City of Redondo Beach*, 657 F.3d 936 (9th Cir. 2011) . . . . . . . . . 28

*Connally v. General Constr. Co.* (1926)
    269 U. S. 385. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Corrie v. Caterpillar, Inc.*,
    503 F.3d 974, 980 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Desaigoudar v. Meyercord*,
    223 F.3d 1020, 1021 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . 17

*District of Columbia v. Heller* (2008)
    554 U.S. 570 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15, 18

*Doe v. Bolton* (1973)
    410 U.S. 179. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . 1, 16, 18

*F.C.C. v. Fox Television Station, Inc.* (2012)
    132 S. Ct. 2307, 2317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Fair Hous. Council San Fernando Val. v. Roommate.com, LLC*,
    666 F.3d 1216, 1219 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . 27

*Fair Hous. of Marin v. Combs*,
    285 F.3d 899, 905 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Grayned v. City of Rockford* (1972)
    408 U.S. 104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 32

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.* (1982)
    455 U.S. 489. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*In re Broderbund / Learning Co. Secur. Litigation*,
    294 F.3d 1201, 1203 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . 17

*King County v. Rasmussen*,
    299 F.3d 1077, 1088 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . 16

*La Asociacion de Trabajadores de Lake Forest v.*
    *City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). . . . . . 28

*Lanzetta v. New Jersey* (1939)
    306 U. S. 451. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Leadsinger, Inc. v. BMG Music Publishing*,
    512 F.3d 522, 526 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . 5, 17

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025, 1030 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . 5

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025, 1030 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . 17

*McClung v. City of Sumner* (9th Cir. 2008)
    548 F.3d 1219. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*McDonald v. City of Chicago* (2010)
    130 S. Ct. 3020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15, 18

*McGraw v. United States*,
    281 F.3d 997, 1001 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . 16

*MedImmune, Inc. v. Genentech, Inc.* (2007)
    549 U.S. 118. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*NAACP v. Button* (1963)
    371 U.S. 415. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Ohio Forestry Ass'n, Inc. v. Sierra Club* (1998)
    523 U.S. 726. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Oklevueha Native American Church of Hawaii, Inc. v. Holder*
    (9th Cir. 2012) 676 F.3d 829. . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*O'Shea v. Littleton* (1974)
    414 U.S. 488 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Papachristou v.Jacksonville* (1972)
    405 U. S. 156 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Peruta v. County of San Diego,*
    742 F.3d 1144 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . 1, 16, 18

*Porter v. Jones,*
    319 F.3d 483, 492 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 30

*Reno v. ACLU* (1997)
    521 U. S. 844. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 32

*Rincon Band of Mission Indians v. County of San Diego,*
    495 F.2d 1 (9th Cir.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Seegars v. Gonzales* (DC Cir. 2005)
    396 F.3d 1248. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Speiser v. Randall* (1958)
    357 U.S. 513. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Thomas v. Anchorage Equal Rights Comm'n* (9th Cir. 2000)
    220 F.3d 1134. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*U.S. v. Chovan,*
    735 F.3d 1127 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . 1, 16, 18

*United States v.Williams* (2008)
    553 U. S. 285. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Valle Del Sol, Inc. v. Whiting*
    732 F.3d 1006 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Walker v. City of Lakewood*,
    272 F.3d 1114, 1124 n.3 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . 28

*Ward v. Rock Against Racism* (1989)
    491 U.S. 781. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Western Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## FEDERAL STATUTES

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. §§ 2201 and 2202. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. §§ 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## FEDERAL RULES

Fed.R.Civ.Pro. 12(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16

## STATE STATUTES

CA Penal Code § 16170(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CA Penal Code § 16250. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CA Penal Code § 16590. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CA Penal Code § 16790. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CA Penal Code § 16970. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CA Penal Code § 30500. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CA Penal Code §§ 30520 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CA Penal Code 851.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CA Penal Code § 30510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CA Penal Code § 30600 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 9, 11, 13

<u>INTRODUCTION</u>

The emerging analysis of Second Amendment claims is that they should mirror how First Amendment claims are adjudicated, *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011); *U.S. v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) and *Peruta v. County of San Diego*, 742 F.3d 1144 (9th Cir. 2014). *See also: District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010).

This case tests whether First Amendment doctrines addressing the chilling effect on fundamental rights, when laws that are vague or overbroad result in wrongful arrests on serious charges, will become a part of that emerging Second Amendment jurisprudence.

The individual plaintiffs in this case were arrested, jailed, posted bond, were deprived of arms, and had to hire counsel when they were charged with possession of what California to defines as "Assault Weapons." The criminal cases were dismissed when it was learned (in two of the instances by the government's own expert) that the firearms in question were not "Assault Weapons." The individual plaintiffs brought suit for wrongful arrest and damages.

The institutional plaintiffs paid for the defense of these gun-owners in state court and brought this suit to prevent future miscarriages of

justice by seeking to compel the Attorney General of this State to issue a simple memorandum or regulation to clarify California's complex laws regulating "Assault Weapons."

## JURISDICTIONAL STATEMENT

Federal question jurisdiction arises under the Second and Fourteenth Amendments to the United State Constitution under a theory that a state actor has violated the fundamental rights of the plaintiffs and is therefore actionable under 42 U.S.C. §§ 1983, 1988.

In addition to prospective injunctive relief, Plaintiff-Appellants are seeking declaratory relief. Both the trial court and this appellate court have jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202.

As this action arises under the United States Constitution the trial court and this court have jurisdiction pursuant to 28 U.S.C. § 1331.

Appellate jurisdiction is based on 28 U.S.C. § 1291. The order [ER – Doc # 3, Page # 4][1] and judgment [ER 2:3] appealed from was filed on March 4, 2014. Notice of Appeal was filed on March 20, 2014. [ER 1:1]

## STATEMENT OF ISSUES

Do the Plaintiffs have standing to bring an action for injunctive and/or declaratory relief to remedy the chilling effect of false arrests on

---

[1] Further citations to the ER will be formatted ER [*Doc#*]:[*Page#*].

a fundamental right that is being caused by a vague penal statute? Specifically, should First Amendment principles of vagueness and overbreadth be applied to penal statutes that have a chilling effect on the exercise of Second Amendment rights?

## STATEMENT OF THE CASE

The case was initiated by a complaint filed on March 25, 2010 by Plaintiffs Haynie, Calguns Foundation, Inc., (CGF) and Second Amendment Foundation, Inc. (SAF) [ER 6:147] The suit sought damages (and other relief) arising out of the false arrest of Haynie for possession of an "Assault Weapon" by the City of Pleasanton Police Department. The suit also sought prospective injunctive relief and/or declaratory relief against the California Attorney General and her agency. Haynie settled with the City of Pleasanton and they were dismissed. [ER 6:147, Docket Entry 6]

During the opening rounds of the Haynie case, Plaintiff Richards was falsely arrested under remarkably similar circumstances by the City of Rohnert Park Police Department. He was joined by plaintiffs CGF and SAF in an action seeking substantially the same remedies as Haynie. The cases were related and later consolidated.

Defendant Harris moved to dismiss. The trial court granted the motion with leave to amend on October 22, 2011. [ER 5:131-144]

A third false arrest, this time by the Sonoma County Sheriff, was perpetrated against Plaintiff Richards after the trial court heard oral argument on the Motion to Dismiss, but before its October order issued. A third action was filed with Richards, CGF and SAF named as plaintiffs and Sonoma County Sheriff, along with Harris and her agency were named as defendants. That action was also found to be related and was later consolidated with the Haynie case and the first Richards case.[2] The cases were consolidated under one case number in an order filed on September 6, 2012. [ER 6:152, Docket Entry 66]

Richards settled with the municipal defendants Sonoma County [ER 6:152, Docket Entry 69, 70] and City of Rohnert Park and they were dismissed from the action. [ER 6:154, Docket Entry 90]

The Third Amended Consolidated Complaint against the sole remaining Defendant (Harris and her agency) was filed on December 20, 2013. [ER 4:18-130][ER 6:155, Docket Entry 91]

The trial court entered an order dismissing the Third Amended Consolidated Complaint Without Leave to Amend [ER 3:4-17] and Judgment for the Defendants on March 4, 2014. [ER 2:3] A Notice of Appeal was filed on March 20, 2014. [ER 1:1]

---

[2] A fourth case of false arrest with similar facts was filed, related and later voluntarily dismissed on other grounds.

<u>STATEMENT OF FACTS</u>

Because this appeal arises out of a trial court's order granting a motion to dismiss without leave to amend under Fed.R.Civ.Pro. 12(b), this Court must accept as true the factual allegations of the operative complaint, and construe those facts in the light most favorable to the non-moving party – Plaintiff-Appellants. *Carlin v. DairyAmerica, Inc.*, 688 F.3d 1117, 1127 (9th Cir. 2012); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008); *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 526 (9th Cir. 2008).

The facts as alleged in the Third Amended Consolidated Complaint are that Haynie and Richards along with the Institutional Plaintiffs CGF and SAF, sought injunctive and declaratory relief against Defendants Harris and the California Department of Justice to obtain a finding that the California Penal Codes and Regulations defining Assault Weapons are unconstitutionally vague and ambiguous and therefore result in wrongful arrests and seizures of lawfully possessed/owned arms. They also alleged that the vague and ambiguous definitions of assault weapons and the ongoing risk of arrest and seizure have a chilling effect on the fundamental right to "keep and bear" arms of ordinary and common design that are

protected by the Second Amendment. [ER 4:20]  They further alleged,
as applied to the these particular instances of false arrest suffered by
Haynie and Richards, that the Defendants have a duty to issue easily
created memorandums and/or promulgate regulations to prevent future
false arrests. [ER 4:22-24]

<u>Facts Relating to Haynie</u> [ER 4:24-27]

 On or about February 7, 2009, officers of the Pleasanton Police
Department arrested and detained Haynie thus depriving him of his
liberty. Haynie was cited for possession of an Assault Weapon under
California Penal Code § 30600 *et seq*.  Bail was set at $60,000.00.  This
caused Haynie to have to pay a $6,000 fee to a bail bondsman. Haynie's
rifle was not an Assault Weapon because it was not listed in California
Penal Code § 30510 *et seq*.

 Nor could Haynie's rifle be defined as an Assault Weapon because it
could not be identified under Penal Code § 30510 *et seq*. with the
characteristics of an assault weapon in that: (a) It did not have a
"detachable magazine" as that term is defined by California statutory
law and regulations and (b) the rifle had a "bullet button" which
requires the use of a tool (a bullet being defined as a tool by the
California Code of Regulations) to remove the magazine from the gun,

thus making the magazine non-detachable.

Haynie's rifle was based on the popular and common Colt AR-15 rifle. It is functionally identical to an AR-15 except that the magazine (as noted above) is non-detachable and the non-detachable magazine capacity does not exceed ten (10) rounds.

Several manufacturers offer several models of semi-automatic, center-fire rifles that are not "assault weapons" as defined by California law. Examples: (1) Ruger makes a Mini-14 Ranch Rifle. (Caliber 5.56mm NATO/.223 Rem.); (2) Ruger also makes a Mini Thirty Rifle. (Caliber 7.62 x 39mm); (3) Ruger also sells a model 99/44 Deerfield Carbine. (Caliber .44 Remington Magnum); (4) Remington offers a Model 750 Woodmaster. (Available in several calibers.); (5) Browning sells a rifle designated as BAR. (Available in several calibers.); and (6) Benelli makes an R1 Rifle. (Available in several calibers.)

After defense counsel met with them, the Alameda County District Attorney's office declined to file an information against Haynie and the matter was formally dropped from the Alameda County Superior Court Criminal Docket on March 27, 2009.

Haynie was deprived of the possession and use of valuable personal property (a rifle) from the date of his arrest until mid-June of 2009 when he reacquired the firearm from the arresting agency.

On or about October 21, 2009, Haynie obtained a finding of factual innocence under California Penal Code 851.8 from the Pleasanton Police Department. After termination of his criminal case and while this civil case was pending, Haynie wrestled with whether or not he should "keep and bear" such a controversial weapon. He eventually sold this firearm for a number of reasons, including but not limited to a reasonable fear that he would face future additional arrests.

Those fears are reasonable because Haynie regularly goes to the range to shoot his rifles. These ranges are public places. Because the rifle he wants to reacquire looks like a contraband weapon, he draws attention to himself by possessing this legal version of the rifle in these public settings. This makes it likely that Haynie will have future law enforcement contact and possible arrest based on possession of this particular rifle. This reasonable fear results in a chilling of his fundamental right to "keep and bear" arms of common use and ordinary design.

### Facts of Richards' First Arrest [ER 4:28-32]

On or about May 20, 2010, Richards was arrested for a violation of CA Penal Code § 30600 et seq. – Possession of an unregistered Assault Weapon. The City of Rohnert Park officer who made the arrest also seized firearms (2 pistols and 1 rifle) from Richards, thus depriving him

of the means of exercising his Second Amendment rights.

On the strength of an incident report prepared by the arresting officer, who claimed to be a firearm instructor and an expert witness having previously testified about the identification of Assault Weapons, Richards was charged by the Sonoma County District Attorney with: (1) Two counts of possession of an Assault Weapon under California Penal Code § 30600 *et seq*., and (2) with four counts of possession of large capacity magazines. CA Penal Code § 16590 *et seq*.

After a hearing Richards' bail was reduced to $20,000.00, but not before he spent 6 days in jail while his family tried to raise the funds for bail. On September 9, 2010, prior to a scheduled Preliminary Hearing, the Sonoma County District Attorney's Office dismissed all charges against Richards.

The dismissal was based on an August 16, 2010, report prepared by Senior Criminalist John Yount of the California Department of Justice Bureau of Forensic Services. Criminalist Yount had found that none of Richards' firearms were Assault Weapons as defined by the California Penal Code or any of its regulations. One of the firearms (a semi-automatic pistol) had a properly installed bullet button, thus rendering the firearm incapable of accepting a detachable magazine that could only be removed from the gun by the use of a tool.

The other firearm (a semi-automatic rifle) had none of the features or other  characteristics that make a firearm subject to registration under California's Assault Weapon registration regime.[3]

All of Richards' firearms were semi-automatic firearms of common and ordinary design, just like: (1) The Springfield Armory M1A with California legal muzzle brake and 10-round magazines; (2) Any World War II Era M1 Garands, available for mail order sales from the United States Government through the Civilian Marksmanship program. http://www.thecmp.org/Sales/rifles.htm; and (3) Any World War II Era M1 Carbines, also available for mail order sales from the United States Government through the Civilian Marksmanship program. http://www.thecmp.org/Sales/rifles.htm.  In other words, semi-automatic firearms like the ones Plaintiffs possessed are common and ordinary weapons, suitable for exercising Second Amendment rights.

Based on the expert's report, and because California law does not criminalize mere possession of large capacity magazines, all charges against Richards were dismissed.

Richards was deprived of the possession and use of valuable

---

[3] There was never an issue with the third firearm (another semi-automatic pistol that is actually on the California safe handgun list) being classified as an assault weapon and it was registered to Plaintiff Richards.

personal property (two pistols and a rifle), necessary for exercising his Second Amendment "right to keep and bear arms." This deprivation of constitutionally protected property occurred from the date of his arrest until the property was returned to him following the dismissal.

 As noted above, the Rohnert Park Defendants were dismissed from this action [ER 6:154, Docket Entry 90] after a declaration was provided by the Director of Public Safety for the City of Rohnert Park (Brian Masterson) that the terms "have the capacity to accept a detachable magazine", "bullet button", "pistol grips" and "flash hiders" lack sufficient clarity such that it is difficult for an officer in the field to determine if a firearm that looks like an assault weapon is in fact an assault weapon.

This Director of Public Safety of a local law enforcement agency believes it would be helpful to police officers and the general public if the State of California Department of Justice were to clarify the criteria it considers relevant in determining whether a particular weapon is an assault weapon, particularly as the law applies to bullet buttons, pistol grips and flash hiders. [ER 4:127-130, Exhibit P attached to the operative Complaint]

<u>Facts of Richards' Second Arrest</u> [ER 4:32-34]

On or about August 14, 2011, the Sonoma County Sheriff's Office

arrested Richards and he was charged with a single felony count of violating California Penal Code § 30600 *et seq.*, – possession of an assault weapon.  The arresting officer seized a Springfield Armory M1A from the trunk of Plaintiff RICHARDS car because he apparently believed that the muzzle brake installed on Richards' rifle was a flash suppressor. Bail was initially set at $100,000.  Four days later, after bail was reduced to $20,000, he was released on bond.

Prior to the next court appearance, the weapon in question was examined by the California Department of Justice Bureau of Forensic Services.  Criminalist John Yount issued a report on or about August 29, 2011, that the firearm was not an Assault Weapon under California law.  Again, the arresting officer either lacked the training to properly distinguish a muzzle brake from a flash suppressor and/or the definition of a flash suppressor is so vague and ambiguous that a well trained peace officer can easily confuse a flash suppressor with a muzzle brake. On September 19, 2011, the charges against Richards were dismissed.

The Plaintiffs contend that the Defendants have never promulgated objective standards for identifying flash suppressors and in fact they rely upon manufacturer catalogs and marketing materials, rather than objective scientific tests to determine whether a device is a flash

suppressor, flash-hider, muzzle brake and/or recoil compensator.

Just like the prior incident, the weapon in question – Springfield Armory model M1A is a common and ordinary firearm suitable for exercising the "right to keep and bear arms" under the Second Amendment to the United States Constitution.

Following his second arrest on charges of violating California Penal Code § 30600 – possession of an Assault Weapon – Richards now has a reasonable fear, that by exercising a fundamental right protected by the U.S. Constitution, he is realistically threatened by a repetition of wrongful arrests.  He further contends that the claim of future injury cannot be written off as mere speculation.

As noted above, Richards reached an agreement to dismiss the Sonoma County Defendants from the case in consideration of Sonoma Sheriff-Coroner Steve Freitas' declaration that California Law defining "flash suppressor" is vague and ambiguous. [ER 4:124-126, Exhibit O attached to the operative complaint]

Facts Relating to Defendants' Duty to Clarify the Law [ER 4:34-36]

The California Department of Justice is responsible for the training and education of law enforcement agencies with respect to Assault Weapons under Penal Code §§ 30520 and 31115.  "The Attorney General shall adopt those rules and regulations that may be necessary

or proper to carry out the purposes and intent of this chapter." And, "The Department of Justice shall conduct a public education and notification program regarding the registration of assault weapons and the definition of the weapons set forth in Section 30515."

California's definitions of Assault Weapons are set forth at Penal Code §§ 16170(a), 16250, 16790, 16970, and 30500-31115. The California Code of Regulations interpreting the statutory definition of assault weapons are found at Title 11, Division 5, Chapters 39 & 40.

The Orange County Sheriff's Department has issued a training bulletin about the "bullet button" to prevent wrongful arrests in that county. [ER 4:45-49, Exhibit A attached to the operative complaint.] The City of Sacramento has also issued a training bulletin about the "bullet button" to prevent wrongful arrests in that jurisdiction. [ER 4:50-53, Exhibit B attached to the operative complaint.] Plaintiff, Calguns Foundation Inc., has also published a flow-chart to identify weapons that are designated as assault weapons under California law. [ER 4:54-56, Exhibit C attached to the operative complaint.]

To be fair, Defendant California Department of Justice has promulgated an "Assault Weapons Identification Guide," an 84-page publication which describes the Assault Weapons regulated in Penal Code (former) sections 12276, 12276.1, and 12276.5. In the Guide, the

Department acknowledges that a magazine is considered detachable when it "can be removed readily from the firearm with neither disassembly of the firearm action nor use of a tool being required. A bullet or ammunition cartridge is considered a tool." However, the agency has thus far declined to issue a statewide bulletin or other directive regarding the recently developed "bullet button" or to develop a field test to insure state-wide compliance with the law and/or to prevent wrongful arrest.

Plaintiffs also alleged that Defendant Harris and her agency not only failed to clarify the law, but in fact took actions that contributed to the present state of confusion about the law. [ER 4:36-40, Paragraphs 88 to 103 of the operative complaint; ER 4:57-123, Exhibits D to N attached to the operative complaint.]

One final point. Because the case was dismissed before the parties had an opportunity to conduct discovery, there is a real head-scratcher of a mystery here. Given the minimal, even routine effort necessary to prevent wrongful arrests, why would the state agency responsible for promulgating regulations and memorandums to clarify the law refuse to do so? Would this lawsuit even be necessary if the fundamental right being chilled was the right to speak, freedom of the press, the right to assemble, the right to worship, the right to an abortion?

## SUMMARY OF ARGUMENT

The Supreme Court's decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010) did not resolve the debate on the Second Amendment's meaning. Those opinions opened a flood-gate of new questions. In this Circuit important questions have already been resolved.

Second Amendment claims should be adjudicated in the same manner as First Amendment claims. *U.S. v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) and *Peruta v. County of San Diego*, 742 F.3d 1144 (9th Cir. 2014). *See also: Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011).

The particular question raised by this case is whether this Circuit should extend its First Amendment jurisprudence analyzing those government policies that have a chilling effect on a fundamental right to the Second Amendment. Plaintiff contend that those protections can and should be extended.

## STANDARD OF REVIEW

A district court order dismissing a complaint pursuant to FRCP Rule 12(b)(1) is reviewed *de novo*; and the appellate court must accept all uncontroverted factual assertions regarding jurisdiction as true.

*McGraw v. United States*, 281 F.3d 997, 1001 (9th Cir. 2002), amended 298 F.3d 754; *King County v. Rasmussen*, 299 F.3d 1077, 1088 (9th Cir. 2002). The court's review is not limited to the complaint itself but may also include 'affidavits or other evidence properly before it.' *Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007).

An order granting or denying a FRCP Rule 12(b)(6) motion to dismiss for failure to state a claim is reviewed *de novo*. *Carlin v. DairyAmerica, Inc.*, 688 F.3d 1117, 1127 (9th Cir. 2012); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030 (9th Cir. 2008); *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 526 (9th Cir. 2008). Review ordinarily is limited to the face of the complaint, but including materials incorporated by reference and matters of judicial notice. All well-pleaded allegations of material fact are accepted as true and construed in the light most favorable to the nonmoving party (plaintiff in the proceedings below). *Carlin v. DairyAmerica*, supra, 688 F.3d at 1127; *Manzarek v. St. Paul Fire & Marine Ins. Co.*, supra, 519 F.3d at 1030-1031; *Leadsinger, Inc. v. BMG Music Publishing*, supra, 512 F.3d at 526.

Dismissals without leave to amend for failure to state a claim generally are reviewed *de novo*. Such dismissal will be affirmed only if

it appears 'beyond a doubt' that the complaint cannot be saved by further amendment. *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1021 (9th Cir. 2000); *In re Broderbund/Learning Co. Secur. Litigation*, 294 F.3d 1201, 1203 (9th Cir. 2002) – dismissal without leave to amend appropriate where pleading cannot be cured by alleging other facts.

## ARGUMENT

### I. First and Second Amendment Claims Should be Subject to the Same Standing Analysis.

The District Court erred by granting Defendants' motion to dismiss because it failed to apply heightened scrutiny to government conduct that has a chilling effect on a fundamental right.

Possession of common and ordinary firearms by law-abiding citizens for lawful purposes is protected by the Second Amendment. *District of Columbia v. Heller*, 554 U.S. 570 (2008) That right may be enforced against state actors through the Fourteenth Amendment. *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010).

Some form of heightened scrutiny is necessary when government policy or practice interferes with a law-abiding citizens Second Amendment rights. *U.S. v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) and *Peruta v. County of San Diego*, 742 F.3d 1144 (9th Cir. 2014). *See also: Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011).

Courts are, and should be, particularly wary of laws that chill fundamental rights. Because the California Assault Weapon Statutes regulate the possession of only particular kinds of firearms, some of which appear legal but are not, and some which appear illegal but are not, First Amendment jurisprudence addressing particular words spoken over regulated airwaves is the best First Amendment analogy for the present case.

A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required. See *Connally v. General Constr. Co.*, 269 U. S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law"); *Papachristou v.Jacksonville*, 405 U. S. 156, 162, 92 S. Ct. 839, 31 L. Ed. 2d 110 (1972) ("Living under a rule of law entails various suppositions, one of which is that '[all persons] are entitled to be informed as to what the State commands or forbids' " (quoting *Lanzetta v. New Jersey*, 306 U. S. 451, 453, 59 S. Ct. 618, 83 L. Ed. 888 (1939) (alteration in original))). This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment. See *United States v.Williams*, 553 U. S. 285, 304, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008). It requires the invalidation of laws that are impermissibly vague. A conviction or punishment fails to comply with due process if the statute or regulation under which it is obtained "fails to provide a person of

ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Ibid*. As this Court has explained, a regulation is not vague because it may at times be difficult to prove an incriminating fact but rather because it is unclear as to what fact must be proved. See *id*., at 306, 128 S. Ct. 1830, 170 L. Ed. 2d 650.

Even when speech is not at issue, the void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way. See *Grayned v. City of Rockford*, 408 U.S. 104, 108-109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech.

These concerns are implicated here because, at the outset, the broadcasters claim they did not have, and do not have, sufficient notice of what is proscribed. And leaving aside any concerns about facial invalidity, they contend that the lengthy procedural history set forth above shows that the broadcasters did not have fair notice of what was forbidden. Under the 2001 Guidelines in force when the broadcasts occurred, a key consideration was " 'whether the material dwell[ed] on or repeat[ed] at length' " the offending description or depiction. 613 F.3d, at 322.  In the 2004 *Golden Globes* Order, issued after the broadcasts, the Commission changed course and held that fleeting expletives could be a statutory violation. *Fox I*, 556 U. S., at 512, 129 S. Ct. 1800, 173 L. Ed. 2d 738. In the challenged

orders now under review the Commission applied the new principle promulgated in the Golden Globes Order and determined fleeting expletives and a brief moment of indecency were actionably indecent. This regulatory history, however, makes it apparent that the Commission policy in place at the time of the broadcasts gave no notice to Fox or ABC that a fleeting expletive or a brief shot of nudity could be actionably indecent; yet Fox and ABC were found to be in violation. The Commission's lack of notice to Fox and ABC that its interpretation had changed so the fleeting moments of indecency contained in their broadcasts were a violation of § 1464 as interpreted and enforced by the agency "fail[ed] to provide a person of ordinary intelligence fair notice of what is prohibited." *Williams*, supra, at 304, 128 S. Ct. 1830, 170 L. Ed. 2d 650. This would be true with respect to a regulatory change this abrupt on any subject, but it is surely the case when applied to the regulations in question, regulations that touch upon "sensitive areas of basic First Amendment freedoms," *Baggett v. Bullitt*, 377 U. S. 360, 372, 84 S. Ct. 1316, 12 L. Ed. 2d 377 (1964); see also *Reno v. ACLU*, 521 U. S. 844, 870-871, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997) ("The vagueness of [a content-based regulation of speech] raises special First Amendment concerns because of its obvious chilling effect").

> *F.C.C. v. Fox Television Station, Inc.,*
> 132 S. Ct. 2307, 2317 (2012)

Plaintiff-Appellants have not made a direct facial challenge to California's Assault Weapon Statutes. This lawsuit is about whether California is appropriately regulating this class of weapons in a way that does not impede the exercise of rights for weapons that fall outside

of the Assault Weapon Statute.

Like the parties in *F.C.C. v. Fox, supra,* appellants are motivated to comply with law because they know they are engaged in regulated conduct.  They took the time and made the effort to make sure their weapons were legal.  The gravamen of this case is that possession of arms that are legal is getting people arrested because the police cannot distinguish between contraband and protected arms.  This turn of events is chilling the exercise of "keeping and bearing" arms that are unquestionably protected by the Second Amendment.

Nor are the law-abiding gun owners the only potential victims of this ambiguous law.  The individual officers and municipal defendants were dismissed in this case, in large part because the only injury was loss of liberty and out of pocket expenses.  This would be a different case if the police had escalated the force used to make the arrests and someone had been seriously injured.  Perhaps that is why the Sonoma County Sheriff and Rohnert Park Police Chief, while not plaintiffs in this case, concurred with the appellants in advancing the proposition that Harris and her agency can do something to bring clarity to the law.  [ER 4:127-130, Exhibit P attached to the operative Complaint][ER 4:124-126, Exhibit O attached to the operative complaint]

## II. *City of Los Angeles v. Lyons* should not be applied in First or Second Amendment Cases.

The fact that front-line officers enforcing the law are also looking for clarity is precisely why the line of cases derived from and including *City of L.A. v. Lyons*, 461 U.S. 95 (1983) is not persuasive and should not be controlling in this case. The police admit that they can not distinguish between legal and illegal weapons. The inquiry should not be whether plaintiffs can plead or prove that every peace officer in the state will continue making false arrests under the Assault Weapon Statute. The inquiry should be whether the statute or regulation is so vague that those peace officers must necessarily guess as to whether the firearm in question is contraband or protected. And because possession of firearms is a fundamental right, it is the uncertainty that makes the (imminently curable) vagueness of the Assault Weapon Regulations actionable under Article III of our Constitution.

The pinpoint cite to *O'Shea v. Littleton*, 414 U.S. 488 (1974) in the Court's order is too narrow. If we read beyond: "*Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.*" *Id.*, at 495-96; we come across:

Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. But here the prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners. Important to this assessment is the absence of allegations that any relevant criminal statute of the State of Illinois is unconstitutional on its face or as applied or that respondents have been or will be improperly charged with violating criminal law. If the statutes that might possibly be enforced against respondents are valid laws, and if charges under these statutes are not improvidently made or pressed, the question becomes whether any perceived threat to respondents is sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses, in which event they may appear before petitioners and, if they do, will be affected by the allegedly illegal conduct charged.

*O'Shea v. Littleton*,
414 U.S. 488, 496-97 (1974)

The District Court's error was ignoring the allegations, fairly plead in Third Amended Complaint, that without the proposed remedy of a clarifying memorandum or regulation, the California Assault Weapon Statute is unconstitutionally vague and ambiguous. The full context of *O'Shea* actually supports Plaintiffs' argument.

### III. <u>Plaintiffs' Claims are Ripe</u>.

Because the harm to Plaintiffs is the future exercise of a

fundamental right, caused by the chilling effect of the Defendants'
failure to clarify the offending regulation, the better Article III analysis
for discretionary standing considerations is to assume ripeness when
the cases raises only prudential concerns. *Thomas v. Anchorage Equal
Rights Comm'n* (9th Cir. 2000) 220 F.3d 1134, 1142 (en banc);
*McClung v. City of Sumner* (9th Cir. 2008) 548 F.3d 1219, 1224.

Prudential ripeness requires evaluating "both the fitness of the
issues for judicial decision and the hardship to the parties of
withholding court consideration." *Abbott Laboratories v. Gardner*
(1967) 387 U.S. 136, 149, 87 S.Ct. 1507, 1515 (abrogated on other
grounds in *Califano v. Sanders* (1977) 430 U.S. 99, 105, 97 S.Ct. 980,
984); *Ohio Forestry Ass'n, Inc. v. Sierra Club* (1998) 523 U.S. 726,
736-737, 118 S.Ct. 1665, 1672 – "further factual development would
'significantly advance our ability to deal with the legal issues presented'
and would 'aid us in their resolution'"; see also *Colwell v. Department of
Health & Human Services* (9th Cir. 2009) 558 F.3d 1112, 1124.

The primary inquiry is whether the relevant issues are sufficiently
focused to permit judicial resolution without further factual
development. *Oklevueha Native American Church of Hawaii, Inc. v.
Holder* (9th Cir. 2012) 676 F.3d 829, 838-839 – fitness for review

"requires only the existence of a 'concrete factual situation'" (claims fit for review; no requirement of exhaustion of administrative proceedings in Religious Freedom Restoration Act).

The second inquiry is whether the parties would suffer any hardship by postponing judicial review. Hardship in this context "does not mean just anything that makes life harder; it means hardship of a legal kind, or something that imposes a significant practical harm upon the plaintiff." *Colwell v. Department of Health & Human Services*, supra, 558 F.3d at 1128 (internal quotes omitted).

This lawsuit seeks declaratory/injunctive relief to compel a state agency to act (promulgate clarifying regulatory guidelines) in accordance with their statutory and constitutional duties as they relate to the California Assault Weapon Statues/Regulations, which Defendants still refuse to promulgate. There is no further action required by the agency, which negates any claim that Plaintiffs' claims are unripe due to an unresolved agency or factual record.

> It is well-established that, although a plaintiff "must demonstrate a realistic danger of sustaining a direct injury as a result of a statute's operation or enforcement," a plaintiff "does not have to await the consummation of threatened injury to obtain preventive relief." *Babbitt v. United Farm Workers*, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (1979) (internal quotation marks omitted).

Thus, Santiago need not await prosecution to challenge § 13-2929. *Id.* ("[I]t is not necessary that [the plaintiff] first expose himself to actual arrest or a prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights.") (internal quotation marks omitted). "[I]t is 'sufficient for standing purposes that the plaintiff intends to engage in a 'course of conduct arguably affected with a constitutional interest' and that there is a credible threat that the provision will be invoked against the plaintiff.'" *Ariz. Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2002) (quoting *Babbitt*, 442 U.S. at 298)).

*Valle Del Sol, Inc. v. Whiting*
732 F.3d 1006 (9th Cir. 2013)

A complaint that alleges a history of prosecutions relating to a protected right, along with a fear of future wrongful prosecutions is sufficient to overcome a ripeness challenge. *Doe v. Bolton*, 410 U.S. 179, 93 S. Ct. 739, 35 L. Ed. 2d 201 (1973).[4]

---

[4] "In *Rincon Band of Mission Indians v. County of San Diego*, 495 F.2d 1 (9th Cir.), cert. denied, 419 U.S. 1008, 95 S. Ct. 328, 42 L. Ed. 2d 283 (1974), this Court held that in an action for declaratory judgment, a general threat of enforcement, absent any arrests for violation of a county gambling ordinance, was "insufficient to meet the case or controversy requirements" of Art. III of the Constitution. The *Bolton* decision was distinguished on the grounds that it involved a history of prosecutions under the challenged statute, a circumstance which was not shown in *Rincon* [...]." *Western Mining Council v. Watt*, 643 F.2d 618 (9th Cir. 1981).

IV.  <u>The Institutional Plaintiffs Have Standing.</u>

The institutional plaintiffs' have standing.  This Circuit has held that organizations have  "direct standing to sue [when] it show[s] a drain on its resources from both a diversion of its resources and frustration of its mission." *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012) (quoting *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)).  As quoted in: *Valle Del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1018  (9th Cir. 2013)

The *Fair Housing* opinion did clarify that: " 'standing must be established independent of the lawsuit filed by the plaintiff.' *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936 (9th Cir. 2011) (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1124 n.3 (9th Cir. 2001)). An organization "cannot manufacture [an] injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010); see also *Combs*, 285 F.3d at 903 ("[A]n organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that

very suit . . . ." (internal quotation marks omitted))." *Id.*, at 1219.

Institutional standing is established by several allegations in the operative complaint: (1) CGF has been defending wrongfully accused gun-owners and its members since at least 2007. [ER 4:41-42, paragraphs 104-105 of the operative complaint.]; (2) CGF has been engaged in public education programs relating to semi-automatic firearms since at least 2005. [ER 4:36-40, paragraph 88 to 103 of the operative complaint.]; and (3) CGF actually published a flow-chart to properly identify controlled assault weapons and distinguish them from protected arms. [ER 4:35, paragraph 82 of the operative complaint.  See also Exhibit C attached to the operative complaint at ER 4:54-56.]

The only rational inference to be drawn from these facts is that CGF and SAF divert resources from other purposes, independent of the costs of this litigation, because Defendants wrongful conduct frustrates their organization's central mission – that of promoting, defending and educating law-abiding citizens about their Second Amendment rights.

The District Court is simply asking too much of the holding in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).  Where an injunction is sought against governmental enforcement of an allegedly unlawful statute or regulation, Plaintiffs need only establish a credible threat of

enforcement.  Plaintiffs are not required to 'bet the farm' by violating the law as a prerequisite to testing the validity of the law in a suit for injunction.  *MedImmune, Inc. v. Genentech, Inc.* (2007) 549 U.S. 118, 128, 127 S.Ct. 764, 772;  *Seegars v. Gonzales* (DC Cir. 2005) 396 F.3d 1248, 1251 – pre-enforcement harm complained of need not be totally certain to occur.

Though addressing another flavor of prudential standing, this Court recently had occasion to remind us all that:

> The Supreme Court has held that abstention in the First Amendment context is disfavored because "the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right [the plaintiff] seeks to protect." [*City of Houston v. Hill*, 482 U.S. 451, 467, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987)][...] at 467-68 (internal quotation marks omitted). Our court has been particularly loath to abstain in First Amendment cases: "We have held that, in First Amendment cases, the first Pullman factor will almost never be present because the guarantee of free expression is always an area of particular federal concern." *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003) (internal quotation marks omitted). This concern "applies to both facial and as-applied challenges." *Id.* at 493. In fact, we have abstained only once in a First Amendment context, and that case had an "unusual procedural setting" because the "issue in question was already before the state supreme court." *Id.* at 493-94.  In every other procedural setting, we have rejected abstention.
>
> *Chula Vista v. Norris*
> 2014 U.S. App. LEXIS 11199

The point missed by the District Court is that there has been, and continues to be, a credible threat of harm (wrongful arrest, wrongful confiscation of protected arms, chilling a fundamental right) for each an every day the Defendants fail to issue a clarifying bulletin and/or regulation.  The wrongful arrests alleged (though not all victims are plaintiffs in this action) in the operative complaint started in April of 2007. [ER 4:41-42, Paragraphs 104-105]

Furthermore, the Defendants have (arguably) promoted a vague and ambiguous interpretation of the Assault Weapon Statute that lead to wrongful arrests.  In other words, there is no "contingent future event." There is a continuing failure of the Defendants' compliance with their statutory and constitutional duties. [ER 4:36-40, Paragraphs 88 to 103 of the operative complaint; ER 4:57-123, Exhibits D to N attached to the operative complaint.]

Nor must the Court speculate that Defendants' failure to act is causing the constitutional harm.  Sonoma County Sheriff Freitas sets forth the problems with identifying weapons regulated by the Assault Weapons Act in Exhibit O attached to the operative complaint. [ER 4:124-126, Exhibit O attached to the operative complaint] See also the declaration by Brian Masterson, Director of the Department of Public Safety for the City of Rohner Park in Exhibit P attached to the

operative complaint.   [ER 4:127-130, Exhibit P attached to the operative Complaint] Paragraphs 6 and 7 of Materson's declaration specifically call out the California Department of Justice's failure to promulgate clear guidelines as the cause of his officer's failure to properly identify a weapon regulated by the Assault Weapon Act.

V. <u>Allegations of a "Chilling Effect" are Sufficient for First and Second Amendment Standing</u>.

The harm alleged is not just the false arrests (9 of them set forth in the operative complaint) but also the immediate harm of the chilling of a fundamental constitutional "right to keep and bear arms" of common and ordinary design by law-abiding citizens that might look like "Assault Weapons" but are not.  In recent cases the Supreme Court has instructed lower courts to look with particular care when First Amendment rights are being chilled.

> Due process requires that laws give people of ordinary intelligence fair notice of what is prohibited. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). The lack of such notice in a law that regulates expression "raises special First Amendment concerns because of its obvious chilling effect on free speech."  *Reno v. American Civil Liberties Union*, 521 U.S. 844, 871-872, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997). Vague laws force potential speakers to " 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." *Baggett v. Bullitt*, 377 U.S. 360, 372, 84 S. Ct.

1316, 12 L. Ed. 2d 377 (1964) (quoting *Speiser v. Randall*, 357 U.S. 513, 526, 78 S. Ct. 1332, 2 L. Ed. 2d 1460 (1958)). While "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity," *Ward v. Rock Against Racism*, 491 U.S. 781, 794, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989), "government may regulate in the area" of First Amendment freedoms "only with narrow specificity," *NAACP v. Button*, 371 U.S. 415, 433, 83 S. Ct. 328, 9 L. Ed. 2d 405 (1963); see also *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982).

> *Brown v. Entertainment Merchants Association*, 131 S. Ct. 2729; 2743 (2011)

This Court should continue its normalization of this Circuit's jurisprudence of the Second Amendment by extending the tools of analysis from the First Amendment.  That means that allegations that government policies are having a chilling effect on fundamental rights must be given appropriate scrutiny by trial courts.


CONCLUSION

The Order of Dismissal and Judgment of the Trial Court must be reversed and the case remanded with instructions to permit the case to move forward through discovery and trial if necessary.

Date:  July 23, 2014

/s/ Donald Kilmer
Donald Kilmer for Appellants

## NOTICE OF RELATED CASES

Plaintiff/Appellants are not aware of any pending cases in Northern District of California or the Ninth Circuit that could be related to this action.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of this Circuit because it consists of 7438 words and because this brief has been prepared in proportionally spaced typeface using WordPerfect Version X5 in Century Schoolbook 14 point font.  Dated: July 23, 2014

 /s/ Donald Kilmer
Donald Kilmer, Attorney for Appellants


## CERTIFICATE OF SERVICE

On July 23, 2014, I served the foregoing APPELLANTS' OPENING BRIEF by electronically filing it with the Court's ECF/CM system, which generated a Notice of Filing and effects service upon counsel for all parties in the case. I declare under penalty of perjury that the foregoing is true and correct. Executed July 23, 2014.

/s/ Donald Kilmer

Attorney for Appellants