Law Offices of Donald Kilmer
A Professional Corporation

1645 Willow Street, Suite 150
San Jose, California 95125-3030
E-Mail: Don@DKLawOffice.com
Phone: 408/264-8489
Fax: 408/264-8487

July 14, 2016                    **<u>E-File</u>**

Clerk of Court
United States Court of Appeals
For the Ninth Circuit
95 Seventh Street
San Francisco, California 94103-1526

Re:       <u>Haynie, et al. v. Harris, et al.,</u> - Case No.: 14-15531
          Appellants' Letter Brief by Order of the Court (DktEntry 45)
Status:    Oral Argument is set for July 20, 2016
Before:    GRABER, and TALLMAN, Circuit Judges, and RAKOFF
          (New York Southern), District Judge
Action:    Distribute Pursuant to Circuit Rules for Supplemental
          Briefing

Your Honor(s):

     The abbreviated response to the question raised by this Court's Order of July 7, 2016 (DktEntry 45) was set forth in Appellants' Fed. R. App. P. 28(j) letter. (DktEntry 44) This letter brief expands on those arguments.

     This case arose in the context of a series of false arrests of law-abiding citizens exercising their Second Amendment rights.

Furthermore, the arresting agencies, in full agreement with Plaintiffs-Appellants, fault the Attorney General's office with a failure to provide technical interpretation and regulatory refinements on new firearm technology.  See Exhibits O & P of the operative complaint. [ER Tab 4: Pages 124 - 130]

There were three false arrests. The facts relating to the false arrest of Mr. Haynie are set forth in ¶¶ 22 - 39 of the operative complaint [ER 4:24 - 27].  The facts relating to the first false arrest of Mr. Richards are set forth in ¶¶ 40 - 64 [ER 4:28 - 32].  Both of these false arrests were predicated on the misidentification of firearms as "assault weapons" that had "bullet-buttons" installed on them, and thus these arms were exempt from the statute.

Mr. Richard's second arrest was for possession of a protected arm misidentified as an "assault weapon" because the arresting officer thought the rifle had a "flash suppressor." See ¶¶ 65 - 76 of the complaint [ER 4:32 - 34] and Exhibit O of the operative complaint. [ER 4:124 - 126]

This third false arrest (Mr. Richard's second) means the case still poses a live controversy, even if this Court is persuaded that AB 1135 &

SB 880 moots the "bullet-button" issues. That is because neither statute addresses the ambiguities relating to "flash suppressors" that is raised by the operative complaint. Appellants further contend that AB 1135 & SB 880 do not moot the case, even with respect to magazine technology.

This case never was about "bullet-buttons" *per se*. It was about the Attorney General's statutory and constitutional duty to promulgate regulations and public outreach programs to assist the public and local law enforcement agencies in their efforts to understand what is and what is not an "assault weapon." See generally Penal Code §§ 30520, 31115. [ER 4:34 - 40]

The Attorney General not only failed to perform that duty, but her office added to the general state of confusion about "assault weapon" definitions by refusing to respond to simple inquiries by individuals seeking to comply with the law. [ER 4:36 - 40 and ER 4:57 - 123] What possible interest can the State have in tolerating (and generating) confusion about its own penal code?

It is the Attorney General's continuing failure[1] to address innovation that poses the ongoing danger of false arrests. When fundamental rights are impacted by technological innovation, and the government can provide clarity through a regulatory process to prevent those wrongful arrests, what interest is advanced by failing to exercise that regulatory power?

The prior statute (Penal Code § 30515) used an "assault weapon" definition that required a threshold determination that a semi-automatic, center-fire rifle had "<u>the capacity to accept a detachable magazine</u>" before moving on to a second criteria of "other characteristics[2]" that could designate it an "assault weapon."  If the rifle did not have "the capacity to accept a detachable magazine" then it didn't matter what "other (secondary) characteristics" the weapon had, it could not – by definition – be an "assault weapon."

The market responded with a device that made the magazine non-

---

[1] Mr. Haynie's case was filed in 2010. The law requires identification and registration of newly defined "assault weapons" by January 1, 2018.

[2] Pistol grips, thumb-hole stocks, folding/telescoping stocks, grenade launchers, flash suppressors, and forward pistol grip.  PC § 30515, *et seq*.

detachable, unless a tool was used to accomplish that detachment. Furthermore the California Department of Justice had recognized in its own regulations that bullets qualified as tools for purposes of assembly and disassembly of firearms. Hence the name "bullet-button."

California's revision to Penal Code § 30515 (by the newly enacted AB 1135 & SB 880 redefining, yet again, what constitutes an "assault weapon") might appear to address two of the three false arrests documented in the operative complaint. The new law now requires a semi-automatic center-fire rifle to have a "fixed magazine" (rather than a non-detachable magazine) in addition to having any of the same "other characteristics" that existed in the prior law to avoid "assault weapon" designation.

And what has happened since July 1, 2016? The firearm industry has responded with new technology that addresses the feature of a "fixed magazine" rather than "detachable magazine." A demonstration of this new technology can be viewed on YouTube™ at:

https://youtu.be/XedaFH6pC1o



[Screen Shot from the Video]

This new device converts a rifle's magazine to "fixed" as that term is defined in the newly enacted statutes.  With this device properly installed, a partial - though simple - disassembly of the firearm is necessary to change the magazine.  With this new modification, the AR-15 pattern rifle will remain a viable legal semi-automatic, center-fire rifle in California without being subject to the "assault weapon" statute.

If the Attorney General, with all the same regulatory powers available to her prior to AB 1135 & SB 880, failed to address the "bullet-button", why should we expect that she will diligently address this new innovation unless she is compelled to do so by this Court?

This case was (and still is) about whether the Attorney General has a duty to respond to changes in firearm technology that impact constitutional rights. More importantly, what is that duty when criminal sanctions have been wrongfully imposed (and will likely continue to be wrongfully imposed) due to ambiguous definitions?

California has now amended its "assault weapon" statutes for at least the third time. This is itself an indication of the ambiguities that will arise out of laws that attempt to outlaw technological innovation. The California legislature could just decide to ban an entire category of arms, namely all semi-automatic rifles. That action would at least have the virtue of clarity.[3]

The legislature hasn't done that. What we are stuck with now is that the agency tasked with defining what guns are censored and what guns are approved by the state, must be compelled to take its regulatory duties seriously, especially when that regulatory duty impacts a fundamental right.

---

[3] It would raise a different set of issues outside the scope of the pleadings of this case, but at least that more draconian approach has the beauty of providing bright line rules.

## Live Case or Controversy

This Court's July 7, 2016 Order required the parties to address whether, in light of AB 1135 & SB 880, there remained a live case or controversy. Incontrovertibly, there remains a live case or controversy with respect to "flash suppressors" and Mr. Richard's second arrest. The new statutes do not change that definition.

The bigger conundrum is posed by the posture of this appeal. The District Court's order found that this case was not ripe for adjudication under the *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) line of cases. But only previously- 'ripe' issues can become moot. *Western Oil & Gas Ass'n v. Sonoma County*, 905 F.2d 1287, 1290 (9th Cir.1990), so it would appear that this Court must still resolve the ripeness issue raised by the District Court before addressing the mootness issues.

Appellants contend that when the state seeks to regulate a fundamental right through statute and regulatory rule making, and when that process is woefully inadequate (with the foreseeable results being: arrest, confinement, bail costs, and defense costs for what turns out to be innocent conduct) then the State's duty for promulgating clear and unambiguous regulations is heightened. That is why *Lyons* should

not control in these circumstances. The better approach for addressing ripeness as party of "case or controversy" justicability is set forth in the Second Circuit case of *Knife Rights, Inc., et al, v. Vance,* Case No.: 13-4840. (See DktEntry 30)

The question (at least with respect to magazine technology) is: How many more false arrests by local agencies for possession of these firearms will be required before the Attorney General is culpable for inaction or the statutory scheme declared unconstitutionally vague? Are the wrongs alleged in the complaint capable of repetition yet evading review? *Sosna v. State of Iowa*, 419 U.S. 393, 399-402 (1975). This exception to the mootness doctrine is most appropriate in cases brought by individuals against a government entity where it is anticipated that the government's action (or inaction) will be repeated. *United States v. Orr Water Ditch Co.*, 391 F.3d 1077, 1080-1081 (9th Cir. 2004), as amended at 400 F.3d 1177 (9th Cir. 2005).

The Attorney General has a statutory and constitutional duty to respond to technological innovations to prevent false arrests and the chilling of a fundamental right. Such findings and orders are necessary so that gun owners can comply with the law and local law enforcement

agencies won't be making false arrests for conduct protected by the Second Amendment. The matter should be reversed and remanded to the District Court with orders that the Defendant answer the complaint.

Respectfully,

/s/ Donald Kilmer
Attorney for Appellants

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed.R.App.P. and/or the alternative Circuit Rule. It contains 1500 words using WordPerfect Version X8 in Century Schoolbook 14 point font.

Because the Deficient Filing Notice requiring this revised letter brief did not permit editing the document to remove 100 words to comply with the 1400 word limit, a concurrently filed unopposed motion to file an oversized (by 100 words) is being submitted to the Court.

    Dated: July 15, 2016          /s/ Donald Kilmer
                                             Attorney for Appellants


# CERTIFICATE OF SERVICE

On July 14, 2016, I served this Appellants' Letter Brief by electronically filing it with the Court's ECF/CM system, which generated a Notice of Filing and effects service upon counsel for all parties in the case.

I declare under penalty of perjury that the foregoing is true and correct on this July 14, 2016.

         /s/ Donald Kilmer
         Attorney of Record for Appellants